The next case today, number 231132 and 231134, United States v. Luis Javier Matta-Quinones. Will counsel for the appellant please come up and introduce yourself on the record to begin. May it please the court, Assistant Federal Public Defender, Jose David Rodriguez, on behalf of Mr. Matta, may I reserve three minutes for rebuttal. You may have three minutes. Thank you. Your Honors, Mr. Matta did not get a fair trial. The government's evidence was thin and the district court committed numerous errors, including sending a member of the prosecution team to meet with the jury in private during deliberations, evidentiary rulings that prevented Mr. Matta from presenting a complete defense, calling the evidence during deliberations in a way that obstructed the jury ability to test the government theory and focus their attention on evidence that favored a conviction, among others discussed in the brief. These are all important legal issues that is worth of this court's consideration. I would like to start today focusing on the extraordinary jury intrusion error. A key tenet of our – Could you just clarify procedurally the weapon was in the courtroom, the jury was in the courtroom, the agent was in the courtroom, and there were two other – was the court officer in the courtroom with the guns? There was a court officer and a U.S. Marshal. And a U.S. Marshal. Yes. So all of those people were in the room when the jury was deliberating. All of those people were in the courtroom, no attorney, no court present. The case agent, which was a member of the prosecution team, introduced from the very start to the jury, who sat at the table with the prosecutors during table, who was admonished at trial for gesturing towards the chip. That's the case agent that the court sent to meet in private. We don't know what happened there. There was jury contact and an adversary intruded into the sanctity of deliberations, and this court, neither anybody else has any idea what happened there. And we are talking about not necessarily making comments or even conscious acts or comments to influence the jury. Just another point of clarification, and I'm sure my presiding judge will give you more time because I'm eating it up, and I apologize for that. Is this something common in the District of Puerto Rico? Because, quite frankly, we've never heard of this before with a case agent in the midst of jury deliberation. I have spoken with experienced trial attorneys in my office. They have never encountered a situation like this. They tell me usually what happens is a court staff is sent to the deliberations room with the jury, or the jury is brought to the courtroom in the presence of the parties and everybody, or they are given the forums to the deliberations room. In this case, the forums were tied with zip locks. They were secure. There was no concern regarding safety, and the court acknowledged that. The court never mentioned the word safety at all. And in my research in preparing for this case… Did the court explain what its concern was with the jury having the weapon in the deliberations room? No, Your Honor. The court didn't express that concern. Your Honor, look at the pages 383 on or 382 on until page 400 of the appendix where this issue is being dealt with. The word not a single time mentions the word safety, safe. We need to do this work. In fact, the court acknowledges that the court knows the forums are secure. Can I ask you this? So, you know, I read the closing arguments, and I see that the defense attorney says to the jury, you know, you should look at these guns. You should handle them. You should put them in the feed bag, see how much it weighs to see whether, you know, I ask you to do this to see whether you think he could have thrown the bags or whatever. The feed bag is in the jury deliberations room, right? The firearms are in the courtroom, and the jury comes in to see the firearms. I'm reminded of when I used to try cases, the advice was you win the trial, right? You don't try the case for appeal. And so, in some ways, I think the government argues here that you waived the true objection here to having the case agent in the room because, and I think, you know, you got some of what you wanted, right? You got the jurors with the weapons. We think they were allowed to touch them. The case agent is told not to speak. What is your argument that the defense attorney here didn't agree to this? Well, Your Honor, the defense never asked for the jury to handle the weapons. The defense told, Your Honor, what we want is them to carry the bag. They don't need to take the guns out of the bag, but that's to clarify. The defense, Your Honor, at page 483 and 484 of the appendix, when the issue is in front of the parties, and the court says, well, guys, now is the time. This is the instruction I drafted. It says, you go see the forums in the courtroom with the case agent, and the rest of the evidence will be sent to you to the deliberation room. Do you agree with this, defense counsel? And counsel said very clearly, no, Your Honor. We also want the forums, which were in the courtroom with the case agent, to go to the deliberation room. The court here, the judge here, clearly understood that the defense was objecting to the presence of, to the jury looking at forums with the case agent present because the court had a strong reaction to that. It said, no, denied, no way. This is at page 484 because the case agent has to be present, end quote. So on the Rule 51B of criminal procedure, which this is sufficient preservation, because we told the court of the action we wanted the court to take. I just want to interrupt you. I think 484 is the objection to the sentence. I think we're – Pardon, Your Honor, pardon. Page 384. I apologize. My confusion. 383, 384 of the appendix. You see the district court, they're asking defense counsel, now is the time, for real. What we discussed before were preliminary conversations. I have drafted the response. I'm going to read it to you. Do you agree with this? And the defense at that time, the right time, before it was too late, said, no, Your Honor, we don't agree. We object. But are they objecting to the case agent there? Most of your argument on appeal has to do with the case agent. Yes. Well, implicitly, Your Honor, in that objection, the idea was we don't want the jury to see the farms with the case agent. And the court understood it because the court said, no, the case agent has to be present. I've got to say, I've read the record here of this part several times. What it really strikes me that happened was not that the case agent would be there. That may be a problem. But what it seemed like the real concern was we are going to separate. Now, if we do this in the courtroom, we're going to separate the feedback from the guns, and the opportunity to do what the defense asked the jury to do is now very much made much more difficult because of this procedure that the judge imposes after the closing argument. So what troubles me is on appeal, it's all about, like, the influence of the case agent, which when I read the objection, that really doesn't seem to be what the concern is. The concern is we can't do our feedback thing. And I think that's a real concern, but I guess I'm confused why that wasn't really the argument here because it seems like that was the concern there. I view it differently, Your Honor. And I think that the district court understood the concern involved the case agent because of how the court reacted. But even in addition to that, Your Honor. So what's the remedy for that, by the way? So if that's right and the case agent shouldn't have been there, is that an automatic reversal? Do you need to void the jury about the influence? It's automatic reversal for new trial. That's the remedy this court granted in Gaston Brito, a case where the contact was much less significant than what happened here. In Gaston Brito, the parties were not even sure there had been a contact with the jury. Just the probability of a contact with the jury, with the case agent, with the jury, Your Honor, this is really extraordinary. This is the top level of errors that can occur during a trial. What our system is designed to avoid to the extreme possible. Is it problematic that the defense counsel didn't ask the judge to inquire what went on when the agent was in the courtroom with the jury? No, Your Honor. Again, we filed a timely motion for a new trial telling the court we want a new trial. These are the reasons. We explained how prejudicial this contact had been, how there are no ways to ascertain error. And this court in Gaston Brito has said that when the defense raises at least a non-frivolous suggestion of taint by the contact, that the jury may have been affected and here the taint was, for different reasons, very problematic, the contact. It is on the government's burden to ask for a hearing and to make clear on the record that the contact did not have any effect. And if the government doesn't ask for a hearing, it is the court's obligation to conduct an appropriate inquiry. That's what happened also in Gaston Brito. The defense asked in Gaston Brito for a new trial. And this court reversed because the district court had the obligation to conduct an appropriate inquiry, which will vary on the extreme and the extent of the contact. But some inquiry has to take place so that this court can be in a position to make a finding that no error occurred. Again, a presumption of prejudice automatically triggers with a contact. And under Rule 51B, if I may finish this thought, the rule says the defense sufficiently preserved an issue for appeal. If the defense, if the party tells the court of the action the court, the party wants the court to make. And we told the court that we wanted the jury to examine all the evidence in the liberation room. If the court had accepted our request, we will have avoided this issue. The court understood our concern was with the case agent, explicitly said the case agent has to be present. And after the court had ruled and made this definitive ruling, we still continue to express our concerns with the case agent presence while trying to abide, telling the court, well, please, at least separate them as much as possible. And the court said, no, don't make a federal case out of this. The case agent will be next to them, and we'll have to hand the jury the farms. The case agent who was admonished for gesturing improperly towards the chips of the farms. Before you sit down, you made a couple of claims of evidentiary error. Could you just briefly touch on those? And more importantly, could you tell us that even if we agreed with you? How would that be reversible error? Yes, your honors, the defense theory was this gun guns did not belong to Mr. Mata. They belong to other people who were there, who were the actual targets of this plan, of this investigation. And there was evidence by the witnesses, a trial that Mr. Mata was not the target. So that was the defense theory. We tried to, there are two issues with evidentiary. One is an official form, a probation record that was created the day after the arrest. When the, that states, that record, that the cell phone was recovered from Mr. Mata's pocket, not from the bag. This contradicted the defense, the witnesses account that the cell phone was with the farms in the bag, which was convenient for the government because it not only established a link between Mr. Mata and the farm, but it also supported or tried to support the government's view that he knew these farms were machine guns. So we wanted to present that official record saying that the farms were not with the guns. That seems to me like the statement in that record could be really central to your defense. But so, so two things. You say it's a business record. It should have come in. Why was that form reliable without saying business records? Can you give me some reasons? And then secondly, couldn't you have just called the, I'm sorry, I'm forgetting the names. I think it's Rosario's statement to Morning Lane. Couldn't you have just called Rosario to testify to that statement? On the first part, Your Honor, the government's grounds to object were never on lack of reliability on that this, on that Rosario lacks knowledge or the document is unreliable. The government's grounds to object was that is double hearsay because he, Rosario, does not work for probation. Why isn't it, though? Probation has no, probation is just taking in a piece of evidence. Why does it matter to probation where the agent says he got it? How is that relevant to probation's purpose? Because I understand this. If you just have a statement that's not really pertinent to what the agency that's maintaining the record cares about, that is a hearsay problem. Well, Your Honor, the first, the government never said that the form was not relevant. But, and second. Not relevant in some sense, but relevant to this point, like where agent whoever found the phone. Why is that relevant to what probation's going to do, which is just take in this evidence? Well, the information is built into the form. So that means that for the people at probation who drafted that form, that information. But that goes too far. That just means there's never double hearsay as long as it's on the form no matter what. No, Your Honor. And second, the cell phone was being handed to probation to conduct an extraction of the cell phone. The person at probation office doing the extraction, it is important information to know where the cell phone came from and who had it. What the rule is. Why? You're just doing a cell break dump of the phone. I mean, wherever it came from, I'm going to dump it, and then we're going to look at it. Why does it matter? Well, it gives you context if you are the person doing the extraction to know to whom the cell phone belonged, where it was found. Was it found in a trash can? Was it found in the person's pocket? Where was it before the person who brought it to me, where was the phone when that person found it? But again, the government never raised any issues with the information being irrelevant, with the form being irrelevant. The government's basis and the court's basis to exclude was categorical. No, you cannot use this because the business record exception does not cover information transmitted by an agent from a different agency to another agent from another agency. There is no basis for that categorical ban in the rules. And the categorical ban by the court precluded any further investigation, exploration of reliability. So those questions that Your Honor has asked, first of all, they were not what the government raised below. And the court's categorical ruling prohibited and just barred any further exploration of those issues or of those matters if they were. I see I have gone beyond my limit. This court has no other questions. Thank you. You have three minutes for rebuttal. Thank you, counsel. Please introduce yourself on the record to begin. Good morning, Your Honors. May it please the court, Julia Maconiatis for the United States. Now, Mr. Mata has waived any claim that the district court erred in response to the jury note by specifically acquiescing to the procedure which the court presented prior to sending that jury response. Now, I know Judge Aframes said that he's read the transcript various times. But with the court's indulgence, I do believe it's important to put this into context because a reasonable reading of the transcript would not leave anybody with the idea that the defendants were objecting to the agents present as opposed to the court's bifurcation of evidence. Why would the court even allow that? I don't even understand why the court would allow that in the first place. I ask you the same question I asked Brother Counsel. Is that something peculiar to the District of Puerto Rico? Your Honor, in researching this issue, I sort of went down a rabbit hole to see if there is a protocol. And I was not aware of any protocol of this district, of the District of Puerto Rico. But other districts do have a protocol of how to handle firearms. It can't possibly be that the government's agent is in the jury deliberation room. It just can't be possible that that's part of the protocol. No, I'm not saying that that was part of the protocol. But what's clear from this record is the district court was concerned with the juror's safety. And it says so in the motion for the new trial that happened post-conviction, that it was an apparent accommodation for juror safety. Who said that? The court. Did that happen after? Yes, that happened after. But we're trying to put into context what's going on. Also, I do think— Well, the court doesn't say that when the court is making that decision. No, but at no point, Your Honor, and the reason— Even if it did say that, it seems like there's many other options besides having the case agent lord over the jury while they're looking. I mean, there are many ways to deal with this safety problem. There are other law enforcement officials, marshals that are present who could watch over to make sure nobody does anything dangerous with the guns without having the case agent who sat throughout the trial and actually showed the guns to the jury on behalf of the government during the trial to stand over them. Why was that the only option, assuming safety, that this judge had? Certainly, Your Honor, and I think one of the issues with this case that we have is that the court didn't impose this burden without discussion. And during the discussion, if I may refer to the transcript, it seems on various occasions that the defense acquiesces. I don't even understand who came up with this. Whose idea was this? It was originally the court's idea, Your Honor. And when we look on appendix page 382, where the court receives the question, and it says that the jury wants all the physical evidence to be brought into the deliberating room, then this brainstorming begins, and the court says that my position is that all the physical evidence can be brought to the deliberating room. Is there something in the District of Puerto Rico protocol that doesn't automatically allow all of the evidence? I've just never heard of this. My understanding, and having done trials myself, you sent all of the evidence to the jury deliberation room. Your Honor, I just want to clarify, if I misspoke, there is no known protocol that I do know. So this seemed to be a novel issue. This is one of the cases where the defense attorney specifically requested for the jury to handle the firearms. Part of their theory of the case, obviously, was take all of these weapons and ammunitions and see whether it's feasible, whether it's credible, whether you credit that this individual can take it and throw it on top of a rooster cage. And so they were urging the jury to do so. And I don't mean to make generalizations, but usually you don't want your jurors to be holding machine guns because it gets real, having such a powerful weapon. So this was an odd ripple. But what does that mean? If there's no ammunition in the gun, if there's zip ties preventing anything anyway... But there's 300 bullets next to it, Your Honor. And if there's a zip tie in the chamber so that you can't load the bullets into it, what is the problem? Your Honor, what can be inferred from the court's statements afterwards in the motion, I agree that it wasn't, was that it did not feel comfortable giving two machine guns, even though they were zip tied, but it is a plastic zip tie, along with... But why is the case agent the only one who could serve that ministerial function, assuming it's a legitimate ministerial function? We picked a person associated with one of the sides in the case to do nothing but stand there and say, don't cut that zip tie off. Many people could do that. Why was he the one? I agree that it's not clear why the court chose that one. But the problem with it, an inherent problem, that you really can't unring that bell because we don't know exactly how it would affect any person. So we set up a system where a party with a stake in the case, to some degree, is standing over the jury to make sure they don't cut those zip ties, when I can think of about 100 other people who could do that. And now we create this situation that we can never really unravel. Isn't that a problem? So respectfully, Your Honor, if that had been brought to the court's attention, maybe the court would have said, wait a minute. The court saw the agent as the person who was in custody of the firearms, and that was the court's first inclination. But at no point... I'm sorry, counsel, but the way trials work, and you know this, once something is introduced into evidence, the evidence is in the custody of the clerk in the court, not the agent. Once it's introduced, the agent gives up custody of the evidence. Well, the court had mentioned that, that it was in the custody of the agent. The issue here, Your Honor, be that as it may, the issue here, Your Honor, is that this was discussed for about eight pages on... And I will say, even when it appeared that this was going to happen, the request was, can the case agent at least be behind the bar so that he's not standing over us, the jury, to which the judge says no. So that suggests, all right, this isn't going well for me, defense counsel, so I'm going to try this medium position designed to reduce what I'm suggesting is the prejudice, and the judge said no to that. Two responses to that, Your Honor, if I may. Number one, nowhere in these eight pages of the transcript do they say that we object to the agent's presence. Also... Okay, they're objecting to the agent being next to the jury while they look at it. They did say, we don't want that. Correct, Your Honor. I will give you that. And that's what happened then, because the judge didn't permit that, right? No, the judge said that the agent has to be the one that gives it to them. That is clear from the record. However, what I do want to note, and the government's argument here is largely based on somewhat of an invited error and a waived error, that we have this possible argument and they knowingly relinquish it. Because previous in the trial, when there was other evidentiary issues, other objections, for example, the business record objection that didn't go their way, counsel then says, for purposes of the record, I want to say. And it makes their argument clear. And that's really important for two purposes, for appellate review, for preservation. And also, it gives the judge that moment to say, wait, I may have not considered the argument that you're saying, that the agent's presence is a jury intrusion as opposed to him just being the custody here. So, when they wanted to do it, they did it. But in this case... We've never said that, though, that you have to both object, engage it back and forth, and then also object for the appellate record for later. Your Honor, I do understand what you're saying, that defense counsel here maybe was deliberate and hyper careful in some of the previous objections. But I don't get your argument that we should then somehow apply that here. In contrast to Judge Afram's question, I mean, in response to Judge Afram's question, when you have the government, the attorney, the first time say, if the court will allow them to carry the ammunition, obviously in the presence of the agent, how is that saying that the agent's presence is not correct? Then, when... Here's what happened. Yes, Your Honor. The judge reads the final instruction. The physical evidence may be brought into the deliberating room except the firearms and the ammunition. The jury may view and handle the firearms and the ammunition in the courtroom with the case agent present. Is that okay? Defend. No, Your Honor. We object to that because our request would be for the firearms and the ammunition to be brought to the deliberating room, presumably without the case agent. But nothing is said about the case agent there, Your Honor. And then if we continue, if I may, Your Honor, or if you would like to continue. If case agents don't usually follow evidence into a deliberation room, if the attorney is saying we want the evidence to go with the jury like all the other evidence, I mean, it goes without saying that it necessarily means that you're not wanting an agent for the government to participate in the deliberations, which is what this is. This is participation in deliberation. Your Honor, and then you have the court mention, and I'm not ignoring your question, but what I'm saying is that they implicitly agree with the procedure. The court's not understanding the objection which they're putting on appeal as what happened below. And we know that from the court's response into the Rule 33 motion because it seemed completely floored. And it said that the objection, and it surveyed this whole transcript, was to the location of the evidence, not to the presence. And if indeed there were other remedies that could have happened, if indeed there was a concern, and the court said that having the CSO and the marshal there would have mitigated against it. Now, this is the Monday morning quarterback. Obviously, it's after it happened. But if there also was that concern that this may have happened, that it happened in an hour later, he was convicted. At no point did the defendant put the court on notice that it was the agent's presence. When the defense says, we don't want him – if you're going to do this, I don't want them standing at the table with the – handing them to the – why is that not at least like, oh, they're not happy about this. Why is that not – Because it was still the same room, Your Honor. Because if the issue is that you don't want them in the room, whether you're standing here or whether you're standing five feet away – But it seems to me – it seems to me that you're trying to slice very thin to get to the waiver. When you're not – and there's a lot here that goes back and forth without dealing with what this is really all about, which is you had a government agent standing over the jury while they're handling critical evidence, which, by the way, also was done in a way that precluded the jury from doing what the defense counsel asked them to do, which put it in the – which was to put the guns in the feedback. So all of this happens. And I understand you're trying to slice it very thin. But aren't we missing really the point, which this goes right to the fundamental fairness of this trial? Well, Your Honor, my response to that would be to one of your comments to brother counsel. It seems like an invited error and that if, you know, they get all of this together and then my client is acquitted, no harm, no foul. But even after the jury brought its conviction, at that point they could have said, you know what, Your Honor, there was jury intrusion if it wasn't clear from the record. The court, in its opinion and order from the Rule 33 motion, clearly notes that it did not understand any of the objections to be to that. It was to the location of the evidence. Is the defense counsel correct that there is no burden on the defense when there's intrusion to request a blood year to get a new trial? That's for unauthorized and unknown at the time. So that's something that we make in our an issue that we make in our brief. The two cases that they cited from the First Circuit, which is the Gaston Brito and O'Brien case, they talk about one of them talks about unauthorized. So nobody knows or they didn't have knowledge. And then we're dealing with the situation after it happened. And how do we unring that bell? And so it's incumbent upon the court to then have a hearing to maybe discuss with the juries or discuss with the agents what happened to see if there was any real prejudice here. This procedural posture is very unique, as this panel is aware of, where we have a discussion about this beforehand. And then at no place is there an issue of jury intrusion, governmental agent. And we understand that objections don't need to be made, you know, so eloquently. But then you have the court afterwards saying that I didn't – that was never my understanding of what was said before. What was the government's position throughout this? Was the government fine with this procedure? The government's position was that the jury at all times could have had access and be able to review the evidence. Every time they asked the government, they said, the government didn't make any comments regarding the agent's presence, with the exception is after the note was drafted and everybody said, okay, no objection, it was actually the government that brings it up for a final time and asks the court, what are your instructions to the agent, just to make sure the agent was not to say a word. And then is when they said – then when one of the defense counsels said, well, can they be at separate areas? But before that, we have two situations where the court drafts the instructions and asks any objection. And those are on pages, Your Honor, 390 of the appendix. And then if you look at 389, and there's no objection to it. You know, when the court has already, I won't say chastised or admonished, but at least has instructed the agent not to engage in hand gesturing, which essentially is testifying, and then to have that and then to deny the defense at least some space between the agent and the gun, it's just mystifying. Your Honor, I understand the court's concerns here, but there is a bigger concern when the defense lulls the court into some sort of agreement that the proposed procedure is only to then afterwards make the true claim in the motion for a new trial. And that's how the court understood it. And looking at the context of when we look at these ten pages here, although the location of the evidence was the prime concern so that they would be able to do the exercise of putting everything in there. And circling back to Judge Ephraim's question, if I may finish my thought, the court said that they can bring whatever evidence they want together. The court just didn't want the guns. I get that. But he also said specifically, I'm not going to tell them they should or could. We're just going to wait to see if they come to that, which to me, you've made it a lot harder for them now because you've separated the evidence, right? So you have the guns in one place, the bag in another. And now what we expect is the jury to say, oh, maybe if we ask, he'll let us bring the evidence together and do this thing that the defendant said was so essential to the case. That seems like a tall ask for 12 people who don't know much about a courtroom. And, Your Honor, precisely that was what the defendant's objection was. It seems like a good one, doesn't it? It was to that, not to that. And the government didn't have an objection to that. They said that they can look to all of the evidence. But it was precisely to the location, not the presence of the agent. And when you read that in the context, that's what they were objecting to because they wanted all the evidence to be together. And that's troubling too, isn't it? Because this was a really weak case. Maybe it's sufficient, but it's not a strong case. And this was the essential instruction, promise, whatever you want to call it, of the defense lawyer. And now it has been muddled by what the court does after the defense attorney gives the closing. And so the jury, I don't think, really ever has the chance to test the evidence in the way that was promised. And so now all they're left is some conflicting police officer testimony. Doesn't that trouble the government? Well, Your Honor, with all due respect, the weighted items, because when you look at all of the items seized, the items that are really going to give you weight are the two guns and the ammunition. You have a feed bag that was empty and then another purse. So to the extent, in practical terms— It isn't the idea to— Putting it in a bag. Combine it in the bag, hold the bag because it gets thrown up on a roof, and then ask yourself, juror, do you think you could throw that up on the roof? Because if you couldn't, it's not likely the defendant did, and that's a problem, isn't it? I agree, Your Honor, that that was the idea. But my response to that, and very respectfully, is that the majority of the weight was with them there. So adding a bag and two phones, that they could appreciate the weight just by holding it in that case. Your Honor, I understand Your Honor's concern, and it was never— the government never had an issue with the jury viewing all of the evidence in total. I see my time is up, but if Your Honors would give me 60 seconds to just talk about the evidentiary issues, or if not, we will rest on our brief. Why don't you take a minute? Yes, Your Honor. Going back to Judge Thompson's question regarding even if this were error, how is that error not— The error is harmless. We argued in our brief that the judge's evidentiary rulings for the business record was correct because it was hearsay within hearsay, and it falls completely under this court's precedent in United States v. Vigneault. And we also argued the prior inconsistent statements. But even assuming they were wrong, nothing precluded the defendant from calling Agent Rosario, which would have been the relevant individual for both of these pieces of evidence, and being able to get that evidence that way. But if the error was—if that was error, which I'm not sure that it is, you really can't say it's harmless because, what, they should have done— they were denied the thing they wanted to do, which they were allowed to do, and so their fault is they didn't do this other thing that they shouldn't have been required to do? No, Your Honor. I'm saying that there is no error, but they were left with no— there was a manner of them to present this testimony that they wanted to present that included calling an individual. But if there was error, such that they should have been able to do it the way they wanted, are you taking the position that, sorry, the judge messed that up, but you have to try to do this other way to get relief? Is that your position? Well, our position is—and I'm sorry, that there was no error. Under this court's precedent, there is none.  But even if there was error, that it was harmless because there was other avenues for the district— excuse me, for the defense to present their case. Your business is a French question, I think. I'm sorry if I'm not understanding it. Usually we say harmless. You didn't—that evidence, if it had come in, it wouldn't matter. I don't think you can say that in this case. What you're saying instead is if the judge makes a wrong evidentiary ruling against you, to get relief for that wrong evidentiary ruling, you have to try other ways to get it in that may be available to you. And the only way you can get relief for the judge's mistake is if you try and, I guess, fail to do those other methods. Is that what you're saying? Because I've never heard of that. Your Honor, I'm not saying that there's case law that says that even if the judge errors, then it's incumbent upon the defense to then take extra steps. What we're saying is that in this case, there were extra steps that could have been taken that the defendants did not, even in the absence of that ruling. It's the so what question that we're asking. So what if there were other things? If it was error— Well, they're saying in their brief that they were left without recourse. Maybe that's—I didn't tie it. I'm sorry for not tying my thought together. In their brief, they said that they were left without recourse, and what I'm trying to push back is on that argument that they were not, that there were other ways. This is not some—this wasn't the only piece of evidence that could have brought that in, not that they had an affirmative obligation when the court makes an evidentiary misruling. We're noting that we do not think it did that in that case. But I'm sorry. I'm realizing now that I didn't tie it into their claim that they had no recourse and they were out of luck in this situation. Well, if there are no further questions, the government rests on its brief. Thank you, counsel. Attorney Rodriguez, you have a three-minute rebuttal. Your Honors, if I may reply quickly. Regarding the jury intrusion, the court was on notice. The court knew what our concern was. We told the court, please send everything to the jury deliberation room. The court understood that the concern was with the case agent and said, no, the case agent has to be present. We then told the court, after that ship had sailed, told the court, judge, at least separate them as much as possible. The court said, no, do not make a federal case out of this, and in fact asked for the case agent to handle specifically and be next to the jurors, increasing the potential for improper influence. And the court cut the defendant off. If the court goes to page 392 of the appendix, you see the defense attorney asking the court and trying to convey the concern that at least separate them, Your Honor, and the court cut her off. If I could just interrupt you for a second. It seems like we have a problem with the clock here. It's not moving. Okay, thank you. And then, of course, there was a timely motion for a new trial, expanding and putting everything, the legal part of it in more detail. What happened after the intrusion was that shortly after the jurors came with a verdict on the trial and the next way to raise this issue was with a motion for a new trial. This was not. So this is the key part, right, really. The agent is going to have to give the weapon. Sorry, I'm asking the agent to sit in the first bench instead of the table, right where they're going to handle the evidence. We don't want the jury to feel uncomfortable. The agent is going to have to give the weapon. He can place it on the table, Your Honor. Look, don't make a federal case out of it, says the court. It actually is, says the defendant. And then the court rules the agent is going to have to give the weapon. Is that you're saying that that is your complaint, that the presence of the case agent would make the jurors uncomfortable in the way the court wanted it to happen? That together with the request at page 384 of the appendix where you have the counsel telling the court, we do not agree with what Your Honor is proposing. We want everything to go to the jury deliberation room where there is no case agent in the jury deliberation room. And the court understood the issue was with the case agent, not with the location, because said, no, the case agent has to be there. This was unauthorized contact, Your Honor. This was a contact that happened. The defense was not on board. The defense later had to try to accommodate after the court had clearly denied that request at page 384 to try to, if I may finish this idea, minimize the potential for harm and then propose this alternative. But the defense was not on board. This was unauthorized. Regarding the cell phone, and I will finish with this, Your Honor. This was prejudicial. The jurors specifically asked to know where the cell phone was. They sent a note saying, was the cell phone in the pocket or somewhere else? This was a case, the government's case, hinged on the credibility of the three police officers which gave seriously contradictory accounts. So everything hinged on that credibility of those officers. This, the cell phone, this was powerful evidence. So you didn't actually answer my question, and it's outside of the record so it probably doesn't matter, but you could have called the agent to testify to where the cell phone was found, and you didn't. Well, Your Honor, it assumes that Rosario will be present, will be available, that's not in the record. Yes, and that you could subpoena him. It assumes as well that in trial, not in the course of a regular governmental proceeding, but at trial he will testify consistent, the law enforcement officer, a main agent in the case, consistent with the statement in that official record before, and in any event that we will have been unable to impeach him if he said no, that didn't happen like that, because the court precluded the defense from using any prior statement that was not written by the witness. Did he fill out the form or did probation fill out the form? Pardon? Did the agent fill out the form or did probation fill out the form? Probation filled out the form based on the information that the agent told her the next day. So the agent was telling her the information, probation officer was typing the information. That happened the next day. And the agent was, of course, reliable, or at least what I mean is the government never questioned that the agent lacked trustworthiness. This was an agent who participated from the very start in this investigation. Can I just clarify? So the agent is speaking to the probation officer, and the probation officer is typing what the agent says the day after the arrest? That's right. The record has the date of the day after the arrest, which is the date within 24 hours that agent Rosario went to probation with the cell phone to ask for, to hand the cell phone to probation and to ask for an instruction. Okay. And I'm appreciating what you're saying. So you're saying that based upon the judge's ruling, if you had called Rosario and Rosario had said, no, I didn't say that, that because the judge had excluded the document, you would not have been able to impeach Rosario with the statement because the judge had said that if he didn't adopt it, then he couldn't be used to impeach. It would have been hearsay, first of all, because it was drafted by the probation officer. And secondly, the court, with regards to a different evidentiary error, which is in our brief with prior statements, the court has said also categorically, no, you cannot impeach a witness with statements. I don't really need to get into all that, but that's slightly different, right? The 302 is written by an agent later. Based on the notes, they write up what they think they heard. This was a transcription of what the agent said. You could imagine that you could, if it went to this, call the person and say, all I did was type exactly what he said on the phone. And that might make it different than a 302, right? Right, yeah. That is right. But what I was trying to say is that it would be, assuming that the agent Rosario was available, the court entered a categorical ruling that took the piece of evidence that we wanted to introduce, which was covered under the business record, took it out. We didn't have similar evidence to present. And assuming the agent would have been present, would have testified, would have testified inconsistent with the official record, we would have been unable to impeach him because the official record would have been hearsay. It was drafted by the probation office. Okay, thank you. That concludes arguments in this case.